## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

**IN RE:**

| | |
|---|---|
| **ANTHONY JOSEPH GRIER** | **18-30555** |
| **DEBTOR(S)** | **CHAPTER 13** |

### MOTION FOR RELIEF FROM THE AUTOMATIC
### STAY OF SECTION 362(d) OR IN THE ALTERNATIVE ADEQUATE PROTECTION

**COMES NOW** PHH Mortgage Corporation Servicer for The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP3 ("Movant") and respectfully shows the Court the following:

1.    On April 12, 2018, Anthony Joseph Grier ("Debtor"), filed a petition with the Bankruptcy Court for the Western District of North Carolina under Chapter 13 of Title 11 of the United States Code.

2.    On the date the petition was filed, the Debtor was the owner of real property with an address of 1919 Lakedell Dr, Charlotte, NC 28215 ("Property") and more particularly described in the Deed of Trust referred to below.

3.    The said Deed of Trust secures a Note in favor of Homecomings Financial Network, Inc., in the original principal amount of $66,000.00, dated October 7, 1996 ("Note"), a copy of which is attached as "Exhibit 1."

4.    The Property is subject to the first lien of the Movant by the Deed of Trust recorded in the Mecklenburg County Public Registry, ("Deed of Trust"), a copy of which is attached as "Exhibit 2."

5.    The said Note and Deed of Trust have been transferred and assigned to Movant.

6.    PHH Mortgage Corporation services the underlying mortgage loan and note for the property referenced in this Motion for: The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP3 (hereinafter, "noteholder") and is entitled to proceed accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the Debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP3.  The noteholder has the right to foreclose because noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.

7.    On June 5, 2018 Movant filed a Proof of Claim with a total secured claim of $87,672.80 and a pre-petition arrearage claim of $47,791.21.

8.    Pursuant to the plan, the Debtor was to continue paying the current mortgage payments to Movant outside of the plan.

9.   There is a default in the payment of the post-petition mortgage payments. Upon information and belief, the amount of the default, exclusive of attorney fees and costs, is as follows:

| | |
|---|---|
| 11 payments at $778.25 | $8,560.75 |
| May 1, 2019 To March 1, 2020 | |
| 1 payment at $841.00 | $841.00 |
| April 1, 2020 To April 1, 2020 | |
| Less Suspense | ($996.22) |
| TOTAL PAYMENTS DUE | $8,405.53 |

Attached hereto is a post-petition payment ledger of all direct payments received from the Debtor(s).

10.   The approximate payoff as of good through April 20, 2020 is $88,285.29.

11.   The scheduled value of the subject property is $105,700.00. This information was obtained from Schedule D.

12.   Because the Debtor failed to keep the payments current, as required, Movant is entitled to relief from the Automatic Stay pursuant to Section 362(d)(1) of the Bankruptcy Code for cause shown including, but not limited to, lack of adequate protection.

13.   This motion shall serve as notice to the Debtor that the Movant will collect reasonable attorney fees and costs as allowed by the Note and Deed of Trust.

   **WHEREFORE,** Movant prays the Court as follows:

1.   Modify the Automatic Stay of Section 362(a) of the Bankruptcy Code to permit Movant to enforce its security interest in the Property.

2.   As an alternative to the relief prayed for above, grant adequate protection to Movant for its interest in the Property.

3.   Modify Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure so that it is not applicable in this case and so Movant may immediately enforce and implement this order granting relief from the automatic stay.

4.   Grant Movant reasonable costs and attorney fees incurred in connection with this proceeding; and,

5.   Grant Movant such other and further relief as may seem just and proper.

6.   The Movant further seeks relief to contact the Debtor by telephone or written correspondence and, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.

7.    The Movant further requests that this Court require the Debtor to obtain court approval of any future agreements or modifications which increase or reduce the Debtor's disposable income and/or which affect the ability of the Debtor to perform under the Chapter 13 Plan.

This the 1st day of July, 2020.

*/s/Andrew Lawrence Vining*
Andrew Lawrence Vining, Attorney for Creditor, Bar # 48677
avining@logs.com | 704-831-2286
Shapiro & Ingle, LLP
10130 Perimeter Parkway
Suite 400
Charlotte, NC 28216
Phone: (704) 333-8107 | Fax: (704) 333-8156
Supervisory Attorney Contact: Grady Ingle
gingle@logs.com | 704-831-2217
Electronic Service Notifications: ncbkmail@shapiro-ingle.com

Case number: **18-30555**
Debtor: **Anthony Joseph Grier**

**Basis for asserting that "The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP3"**

PHH Mortgage Corporation services the underlying mortgage loan and note for the property referenced in this Proof of Claim for:
**"The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP3"**
(hereinafter, "noteholder") and is entitled to proceed accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the Debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of the noteholder. The noteholder has the right to foreclose because (check the applicable below):
___ Noteholder is the owner of the note.
_X_ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.
___ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.
___ Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.
___ Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.

05-69199



PHH Mortgage Services                                      Tel 877-688-7116
1 Mortgage Way                                            Fax 856-917-8003
Mt. Laurel NJ 08054

# **IMPORTANT NOTICE**

Upon written request, PHH Mortgage Services will provide the following
information regarding the subject loan:

* A copy of the payment history through the date the account was last less than 60 days past due.
* A copy of the note.
* If foreclosure has been commenced or a POC has been filed, copies of any assignments of mortgage or deed of trust required to demonstrate the right to foreclose on the borrower's note under applicable state laws.
* The name of the investor that holds the loan.

Requests for this information/documentation can be sent to us at the following
address:

PHH Mortgage Services
Mailstop SBRP
PO Box 5469
Mt. Laurel, NJ 08054

This notice is being provided for informational and compliance purposes only. It is
not an attempt to collect a debt.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

IN RE:

**ANTHONY JOSEPH GRIER**                                  **18-30555**
**DEBTOR(S)**                                                      **CHAPTER 13**

### NOTICE OF OPPORTUNITY FOR HEARING

     **TAKE NOTICE** that a motion has been filed by PHH Mortgage Corporation Servicer for The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP3.  A copy of the motion accompanies this notice.

     **TAKE FURTHER NOTICE** that any response, including objection, to the relief requested in the attached motion, should be filed with the Clerk of the Bankruptcy Court within **FOURTEEN (14) DAYS** of the date of this Notice and a copy served on the attorney identified below and upon other parties as required by law or Court order.  Any response shall clearly identify the specific motion to which the response is directed, and it shall comply fully with any Local Bankruptcy Rules applicable.

     **TAKE FURTHER NOTICE** that no hearing will be held on this motion or application unless a response is timely filed and served, in which case, the Court will hear the motion as follows:

| LOCATION | DATE AND TIME |
|---|---|
| US Court House-1st floor<br>401 West Trade Street<br>Charlotte, NC 28202 | July 14, 2020 at<br>10:00 a.m. |

This the 1st day of July, 2020.

                      */s/Andrew Lawrence Vining*
                      Andrew Lawrence Vining, Attorney for Creditor, Bar # 48677
                      avining@logs.com | 704-831-2286
                      Shapiro & Ingle, LLP
                      10130 Perimeter Parkway
                      Suite 400
                      Charlotte, NC 28216
                      Phone: (704) 333-8107 | Fax: (704) 333-8156
                      Supervisory Attorney Contact: Grady Ingle
                      gingle@logs.com | 704-831-2217
                      Electronic Service Notifications: ncbkmail@shapiro-ingle.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

IN RE:

| | |
|---|---|
| **ANTHONY JOSEPH GRIER** | **18-30555** |
| **DEBTOR(S)** | **CHAPTER 13** |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing and annexed pleading or paper upon:

(Served via U.S. Mail)
Anthony Joseph Grier
5426 Dolphin Lane
Charlotte, NC 28215

(Served via Electronic Notification Only)
David William Hands
Hands Law Office, PLLC
3558 N Davidson Street
Charlotte, NC 28205

(Served via Electronic Notification Only)
Warren L. Tadlock
5970 Fairview Road., Ste. 650
Charlotte, NC 28210

by depositing the same in a postpaid wrapper properly addressed to each such party or his attorney of record in a post office or other official depository under the exclusive care and custody of the United States Postal Service and/or by electronic mail, if applicable.

This the 1st day of June, 2020.

*/s/Andrew Lawrence Vining*
Andrew Lawrence Vining, Attorney for Creditor, Bar # 48677
avining@logs.com | 704-831-2286
Shapiro & Ingle, LLP
10130 Perimeter Parkway
Suite 400
Charlotte, NC 28216
Phone: (704) 333-8107 | Fax: (704) 333-8156
Supervisory Attorney Contact: Grady Ingle
gingle@logs.com | 704-831-2217
Electronic Service Notifications: ncbkmail@shapiro-ingle.com

OCTOBER 7        , 1996        CHARLOTTE                    ,  NORTH CAROLINA
                                                    [City]                    [State]

                1919 LAKEDELL DRIVE
                CHARLOTTE, NC 28215
                            [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.$    66,000.00            (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HOMECOMINGS FINANCIAL NETWORK, INC.                                                                . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    9.8750  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments.

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first    day of each month beginning on    NOVEMBER 1 1996   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    OCTOBER 1        ,2026   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at    P.O. BOX 808024, PETALUMA, CA. 94975-8024
                            or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.$        573.11            .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.0000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and if Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ANTHONY GRIER                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF

**RESIDENTIAL FUNDING CORPORATION**

*(signature)*
MARILEE K. KUEHN
ASSISTANT VICE PRESIDENT
HOMECOMINGS FINANCIAL NETWORK, INC.,
A DELAWARE CORPORATION

PAY TO THE ORDER OF
The First National Bank of Chicago as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

BY *(signature)*
D. Cousineau, Vice President

Great Lakes Business Forms, Inc. ■ UP* 800-253-0209 □ MI 1-800-358-2643 □ FAX (616)-791-1131

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL: ▮▮▮▮▮▮    LOAN ID: ▮▮▮▮▮▮    ▮▮▮▮▮▮▮▮▮

NOTE DATE:    10/07/1996    LOAN AMOUNT:    $66,000.00

BORROWER NAME:    ANTHONY GRIER

PROPERTY ADDRESS:    1919 LAKEDELL DRIVE, CHARLOTTE, NC 28215

PAY TO THE ORDER OF

**RESIDENTIAL FUNDING CORPORATION**

WITHOUT RECOURSE
Bank One, National Association as Trustee, f/k/a The First National Bank of Chicago as Trustee
Residential Funding Corporation as Attorney in Fact



BY _____
John Hagebock, Vice President

## ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:           LOAN ID:           

NOTE DATE:      10/07/1996      LOAN AMOUNT:      $66,000.00

BORROWER NAME:      ANTHONY GRIER

PROPERTY ADDRESS:      1919 LAKEDELL DRIVE, CHARLOTTE, NC 28215

PAY TO THE ORDER OF
JPMorgan Chase Bank as Trustee, c/o Residential Funding
Corporation, 2255 North Ontario Suite 100 Burbank, CA 91504-3120

WITHOUT RECOURSE
Residential Funding Corporation

By:

Name: John Hagebock
Title: Vice President
Residential Funding Corporation

**Loan#** ▓▓▓▓▓▓▓▓▓▓

## ALLONGE TO NOTE

This endorsement is a permanent part of the Note, in the amount of $66,000.00

NOTE DATE:              October 7, 1996

BORROWER NAME:    Anthony Grier

PROPERTY:              1919 Lakedell Drive, Charlotte, NC 28215

**PAY TO THE ORDER OF:**
The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP3

**WITHOUT RECOURSE:**
JPMorgan Chase Bank, as trustee

Name: WENDELL PHILLIPS

Title:  VICE PRESIDENT

**Exhibit 2**

BK: 08770 PG: 0673/0680   #:0217   26.00
JUDITH A GIBSON REG OF DEEDS MECK NC
FILED FOR REGISTRATION 10/07/96 12:52

When Recorded, Mail To:
HomeComings Financial Network, Inc.
800 Corporate Drive, Suite 424

Ft. Lauderdale, FL  33334

─────────────── [Space Above This Line For Recording Data] ───────────────

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on  OCTOBER 7TH, 1996
The grantor is
ANTHONY GRIER, A SINGLE MAN

("Borrower"). The trustee is

DONALD J. MULLIGAN

("Trustee"). The beneficiary is

HOMECOMINGS FINANCIAL NETWORK, INC.,
which is organized and existing under the laws of          DELAWARE          , and whose address is
P.C. BOX 808024, PETALUMA, CA  94975

("Lender"). Borrower owes Lender the principal sum of

SIXTY SIX THOUSAND AND NO/100
Dollars (U.S. $    66,000.00    ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
OCTOBER 1ST, 2026                . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in      MECKLENBURG                                                                                    County, North Carolina:
BEING ALL OF LOST 77A AND 78A OF SHANNON LAKE VIEW DEVELOPMENT
AS SHOWN ON A MAP THEREOF RECORDED IN MAP BOOK 9 AT PAGE 87 OF
THE MECKLENBURG COUNTY PUBLIC REGISTRY.

which has the address of  1919 LAKEDELL DRIVE,                             CHARLOTTE
                                                [Street]                                              [City]

North Carolina      28215                  ("Property Address");
                              [Zip Code]

H.G.

**NORTH CAROLINA** -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3034 9/90 *(page 1 of 6 pages)*
ITEM 1935L1 (9203)                                                                            Great Lakes Business Forms, Inc. ■
                                                                        To Order Call: 1-800-530-9393 ☐ FAX 616-791-1131

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and

ITEM 1895L2 (9203)

Form 3034 9/90 *(page 2 of 6 pages)*

Great Lakes Business Forms, Inc. ■
To Order Call: 1-800-530-9393 □ FAX 616-791-1131

for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with

Form 3034 9/90 *(page 3 of 6 pages)*

Great Lakes Business Forms, Inc. ■
To Order Call: 1-800-530-9393 □ FAX 616-791-1131

A G.

any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.**   Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.**   The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.**   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.**   Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.**   This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.**   Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.**   If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.**   If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as

Form 3034 9/90  *(page 4 of 6 pages)*
                                                                                              Great Lakes Business Forms, Inc ■
                                                                                  To Order Call  1-800-530-9393  ☐ FAX  616-791-1131

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.**   The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.**   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, in-

**Form 3034  9/90** *(page 5 of 6 pages)*

Great Lakes Business Forms, Inc. ■
To Order Call: 1-800-530-9393 ☐ FAX 616-791-1131

ITEM 1935L5 (9203)

cluding, but not limited to, Trustee's fees of  0.0000 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

**22. Release.**   Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

**23. Substitute Trustee.**   Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Riders to this Security Instrument.**   If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider      ☐ Condominium Rider          ☒ 1-4 Family Rider
☐ Graduated Payment Rider    ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider              ☐ Rate Improvement Rider     ☐ Second Home Rider
☐ Other(s) [specify]

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)        _____ (Seal)
ANTHONY GRIER            -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower

STATE OF NORTH CAROLINA,                County ss: Gaston
_____, a Notary Public of the County of Gaston
State of North Carolina, do hereby certify that Anthony Grier

personally appeared before me this day and acknowledged the due execution
of the foregoing instrument.
    Witness my hand and official seal this   7th day of October, 1996

My commission expires: 3/15/99     Denise K. Pruitt
                                                      Notary Public

STATE OF NORTH CAROLINA,                County ss:
    The foregoing certificate of            _____, a Notary Public of the County of
                         , State of                   , is certified to be correct.

This              day of

                                        Registrar of Deeds

                                   By _____
Probate fee          paid.                        Deputy Assistant

ITEM 1935L6 (9203)         Form 3034 9/90 (page 6 of 6 pages)
                           Great Lakes Business Forms, Inc.
                           To Order Call: 1-800-530-9393 ☐ FAX 516-791-1131

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this  7TH      day of  OCTOBER, 1996
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed
(the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrowers's Note to
    HOMECOMINGS FINANCIAL NETWORK, INC.

                                                                            (the "Lender")
of the same  late and covering the Property described in the Security Instrument and located at:

    1919 LAKEDELL DRIVE CHARLOTTE, NC 28215
                [Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described
in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property
covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter
located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached
to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider
and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of
the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all
laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the
Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which
insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence
in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements
set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and
all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify,
extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the
word "lease" shall mean "sublease" if the Security Instrument is on leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and
unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to
whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agent to collect the Rents, and agrees

**MULTISTATE 1-4 FAMILY RIDER-Fannie Mae/Freddie Mac Uniform Instrument**          **Form 3170 9/90** (page 1 of 2 pages)

that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are paid to the Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach of Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collect by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rent's, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance cost, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____(Seal)
ANTHONY GRIER                           -Borrower

_____(Seal)
                                        -Borrower

_____(Seal)
                                        -Borrower

_____(Seal)
                                        -Borrower

State of North Carolina, County of Mecklenburg
The foregoing certificate(s) of _____ Denise K. Pruitt _____
_____

Notary(ies) Public is/are certified to be correct. This  7th  day of  October  19 96

**JUDITH A. GIBSON, REGISTER OF DEEDS**   By: _Rosalie B. Pease_____ Deputy Register of Deeds

**Form 3170 9/90** (page 2 of 2 pages)

For Registration J. David Granberry
Register of Deeds
Mecklenburg County, NC
Electronically Recorded
2015 Oct 30 08:52 AM        RE Excise Tax: $ 0.00
Book: 30382      Page: 772        Fee: $ 26.00
Instrument Number:      2015141941

*J David Granberry*

## RECORDING DOCUMENT COVER PAGE

Return to:
Brock & Scott, PLLC
5431 Oleander Drive
Wilmington, NC 28403

Type of Document:            Assignment of Deed of Trust

Deed of Trust Grantor(s):  Anthony Grier

Reference Book:  08770

Reference Page:  0673

Submitted electronically by "Brock & Scott, PLLC FC"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Mecklenburg County Register of Deeds.

File Number: 15-22030

Prepared By: Karen Smith, OCWEN LOAN SERVICING, LLC 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID 83401 800-766-4622

---

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Mecklenburg, North Carolina
SELLER'S SERVICING █████ "GRIER"
SELLER'S LENDER ID#: ██████████
OLD SERVICING ██████████

Date of Assignment: October 23rd, 2015
Assignor: BANK ONE, NATIONAL ASSOCIATION FKA THE FIRST NATIONAL BANK OF CHICAGO AS TRUSTEE BY ITS ATTORNEY IN FACT OCWEN FEDERAL BANK FSB BY ITS SUCCESSOR IN INTEREST OCWEN LOAN SERVICING, LLC at 1661 WORTHINGTON RD, SUITE 100, WEST PALM BEACH, FL 33409
Assignee: THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE FOR RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-RP3 at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH            , FL 33409

Executed By: ANTHONY GRIER, A SINGLE MAN  To: HOMECOMINGS FINANCIAL NETWORK, INC
Date of Deed of Trust: 10/07/1996 Recorded: 10/07/1996 in Book: 08770 Page: 0673 as Instrument No.: 0217 in the County of Mecklenburg, State of North Carolina.

Property Address: 1919 LAKEDELL DRIVE, CHARLOTTE, NC 28215

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $66,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

BANK ONE, NATIONAL ASSOCIATION FKA THE FIRST NATIONAL BANK OF CHICAGO AS TRUSTEE BY ITS ATTORNEY IN FACT OCWEN FEDERAL BANK FSB BY ITS SUCCESSOR IN INTEREST OCWEN LOAN SERVICING, LLC POA: 01/16/2013 in Book: 27988 Page: 233 as Instrument No.: 2013007212

On _____ OCT 2 6 2015

By: _____
    ██████████ , Vice President

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF _____ **Iowa**
COUNTY OF _____ **Black Hawk**

On **OCT 2 6 2015**, before me, **MARY KAMMEYER**, a Notary Public in and for **Black Hawk** in the State of **Iowa**, personally appeared **Vicki Pospisil**, Vice President being by me duly sworn and duly executed of BANK ONE, NATIONAL ASSOCIATION FKA THE  FIRST NATIONAL BANK OF CHICAGO AS TRUSTEE BY ITS ATTORNEY IN FACT OCWEN FEDERAL BANK FSB BY ITS SUCCESSOR IN INTEREST OCWEN LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrumentand acknowledged the satisfaction of the above-referenced Deed of Trust.

WITNESS my hand/and official seal,

**MARY KAMMEYER**
Notary Expires **OCT 2 8 2017**

**MARY KAMMEYER**
**COMMISSION NO.786692**
**MY COMMISSION EXPIRES**
**OCTOBER 28, 2017**

(This area for notarial seal)

Recording Requested By: OCWEN LOAN SERVICING, LLC
When Recorded Return To: OCWEN LOAN SERVICING, LLC 240 TECHNOLOGY DRIVE, IDAHO FALLS, ID 83401

*PRR*PRRGMAC*10/23/2015 12:33:54 PM*

RETURN TO:    SMI/Wesley Hess
P.O. Box 540817      **GRIER, ANTHONY**
Houston, TX 77254-0817

---

## CORPORATION ASSIGNMENT of (MORTGAGE) DEED OF TRUST
WHEN RECORDED MAIL TO:

4728

Loan Number:
Seller Number:

FOR VALUE RECEIVED           **HOMECOMINGS FINANCIAL NETWORK**
the undersigned hereby grants, assigns and transfers to
### BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE
### (FKA THE FIRST NATIONAL BANK OF CHICAGO, AS TRUSTEE)
### 1 BANK ONE PLAZA, SUITE IL1-0126 (RFC), CHICAGO, ILLINOIS 60670-0126
all beneficial interest under that certain Mortgage/Deed of Trust dated **OCTOBER 7, 1996** executed by
**ANTHONY GRIER, A SINGLE MAN**
TO/FOR: HOMECOMINGS FINANCIAL NETWORK and recorded in Book **08770** on Page **0673-0680** as
Instrument No. **0217** on **OCTOBER 7, 1996** of official Records in the County Recorder's Office of
**MECKLENBURG** County/Parish, NC.
MORTGAGE AMOUNT: **$66,000.00**
PROPERTY ADDRESS: **1919 LAKEDELL DRIVE, CHARLOTTE, NORTH CAROLINA 28215**

LEGAL (if required): **BEING ALL OF LOTS 77A AND 78A OF SHANNON LAKE VIEW DEVELOPMENT AS
SHOWN ON A MAP THEREOF RECORDED IN MAP BOOK 9 AT PAGE 87 OF THE MECKLENBURG COUNTY
PUBLIC REGISTRY.**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Mortgage/Deed of Trust.

HOMECOMINGS FINANCIAL NETWORK

BY _____
   Rebecca Reid
   Assistant Vice President

STATE OF Minnesota
COUNTY OF Hennepin

On February 1, 2002, before me, the undersigned, a Notary Public in and for said State personally appeared **Rebecca
Reid** personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to
me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity
upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

_____
Notary Public in and for said State
Prepared by: Rebecca Reid, One Meridian Crossings, Minneapolis, MN 55423



**ELIZABETH PORTER**
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005







## JUDITH A. GIBSON
## REGISTER OF DEEDS , MECKLENBURG COUNTY
## COUNTY & COURTS OFFICE BUILDING
## 720 EAST FOURTH STREET
## CHARLOTTE NC 28202

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **Filed For Registration:** | **02/28/2002 10:40 AM** |
| **Book:** | **RE  13311  Page:** 766-767 |
| **Document No.:** | **2002039892** |
| | **ASGMT   2 PGS   $14.00** |
| **Recorder:** | **SERENA ROSS** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**State of North Carolina, County of Mecklenburg**

**The foregoing certificate of  ELIZABETH PORTER Notary  is certified to be correct. This 28TH of February 2002**

**JUDITH A. GIBSON, REGISTER OF DEEDS By:** _Serena M. Ross_
**Deputy/Assistant Register of Deeds**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



*2002039892*



| Name: | Anthony Joseph Grier | | | | | |
|---|---|---|---|---|---|---|
| BK Case Number: | 18-30555 | 7/1/18 to 12/01/18 payments  included in consent order. | | | | |
| Filing Date: | 04/12/2018 | Non Primary Resident NOPC is not filed | | | | |
| Post First Due: | 05/01/2018 | | | | Completed By: | Sudesh M R |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | Suspense Balance | Comments |
| | 05/31/2018 | $ 640.32 | | $ 640.32 | $ 640.32 | |
| 05/01/2018 | 09/28/2018 | $ 640.00 | $ 775.56 | $ (135.56) | $ 504.76 | |
| 06/01/2018 | 11/29/2018 | $ 729.16 | $ 775.56 | $ (46.40) | $ 458.36 | |
| | 03/05/2019 | $ 209.19 | | $ 209.19 | $ 667.55 | |
| 01/01/2009 | 04/06/2019 | $ 775.56 | $ 775.56 | $ - | $ 667.55 | |
| 02/01/2009 | 04/06/2019 | $ 775.56 | $ 775.56 | $ - | $ 667.55 | |
| 03/01/2009 | 04/06/2019 | $ 775.56 | $ 775.56 | $ - | $ 667.55 | |
| 04/01/2019 | 07/03/2019 | $ 750.00 | $ 778.25 | $ (28.25) | $ 639.30 | |
| | 07/05/2019 | $ 65.44 | | $ 65.44 | $ 704.74 | |
| | 10/08/2019 | $ 7.63 | | $ 7.63 | $ 712.37 | |
| | 12/10/2019 | $ 32.36 | | $ 32.36 | $ 744.73 | |
| | 01/07/2020 | $ 98.45 | | $ 98.45 | $ 843.18 | |
| | 03/04/2020 | $ 65.38 | | $ 65.38 | $ 908.56 | |
| | 03/26/2020 | $ 87.66 | | $ 87.66 | $ 996.22 | |

| Name: | Anthony Joseph Grier |
|---|---|
| BK Case Number: | 18-30555 |
| Filing Date: | 04/12/2018 |
| Completed by: | Sudesh M R |

Non Primary Resident NOPC is not filed

| Due Date | Total Payment | Principal & Interest | Escrow | NOPC Filed Date |
|---|---|---|---|---|
| 05/01/2019 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 06/01/2019 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 07/01/2019 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 08/01/2019 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 09/01/2019 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 10/01/2019 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 11/01/2019 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 12/01/2019 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 01/01/2020 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 02/01/2020 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 03/01/2020 | $ 778.25 | $ 573.11 | $ 205.14 | |
| 04/01/2020 | $ 841.00 | $ 573.11 | $ 267.89 | |
| **Total Due** | **$ 9,401.75** | **$ 6,877.32** | **$ 2,524.43** | |